# UNITED STATES DISTRICT COURT
for the
Eastern District of California

FILED
Sep 15, 2020
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

In the Matter of the Search of )
)
THE CELLULAR TELEPHONE ASSIGNED )   Case No.   2:20-sw-0844 CKD
CALL NUMBER (916) 212-5752 )
) **SEALED**
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____ District of ___New Jersey___, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Section 841(a)(1) | Distribution of a Controlled Substance |
| 21 U.S.C. Section 846 | Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☒ Continued on the attached sheet.
☒ Delayed notice   30   days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/
*Applicant's signature*

James Bonanno, Special Agent, DEA
*Printed name and title*

Sworn to me and signed by telephone.

Date:   9/15/2020 at 9:40 am

*Judge's signature*

City and state:   Sacramento, California        Carolyn K. Delaney, U.S. Magistrate Judge
*Printed name and title*

McGREGOR W. SCOTT
United States Attorney
DAVID W. SPENCER
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Search of:<br><br>THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **(916) 212-5752** | CASE NO.<br><br>AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A WARRANT TO OBTAIN PRECISE LOCATION DATA FROM A CELLULAR TELEPHONE<br><br>**UNDER SEAL** |

I, James Bonanno, being first duly sworn, hereby depose and state as follows:

## I.     INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (916) 212-5752 (the "Target Cell Phone"), whose service provider is Verizon, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.     Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127.  The requested

AFFIDAVIT                                          1

warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent with the Drug Enforcement Administration ("DEA"), Sacramento District Office, and have been so employed since 2018. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing criminal laws and duly authorized by the Attorney General to request a search warrant. I am responsible for conducting investigations into narcotics traffickers and assisting in their apprehension. These investigations are conducted both in an undercover and overt capacity and involve electronic surveillance, cellphone-location evidence, confidential informants, and the execution of search and arrest warrants. Upon being hired by DEA, I completed a four-month DEA Basic Agent School at Quantico, Virginia. After completing DEA Basic Agent School, I reported to my current assignment at the Sacramento District Office, Enforcement Group 2.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 846 and 841 (conspiracy to distribute, manufacture, and possess with intent to distribute fentanyl and heroin) have been committed, are being committed, and will be committed by Alberto SALGADO and other known and unknown co-conspirators. There is also probable cause to believe that Alberto SALGADO is the user of the Target Cell Phone, described in Attachment A, and the location information for these phones described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is in the Eastern District of California a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## II.  PROBABLE CAUSE

7. As discussed in further detail below, DEA agents have been investigating the drug trafficking activities of Alberto SALGADO. Through the investigation, agents have conducted controlled buys of: (1) 142 gross grams of heroin from SALGADO on August 8, 2019; (2) 217 gross grams of heroin and 2 fentanyl pills from SALGADO on September 5, 2019; (3) 126 gross grams of counterfeit prescription pills suspected to contain fentanyl from SALGADO on October 21, 2019; and (4) 208 gross grams of counterfeit prescription pills suspected to contain fentanyl from SALGADO on June 3, 2020. Agents also identified phone number 916-215-6347 as a phone that was previously being used by SALGADO, and on October 10, 2019, Magistrate Judge Deborah Barnes authorized a warrant to collect precise location data on this phone for a period of thirty days. Agents also identified 916-291-3925 as another phone that was previously being used by SALGADO, and on May 6, 2020, Magistrate Judge Allison Claire authorized a warrant to collect precise location data on this phone for a period of thirty days. Agents also identified 279-203-2225 as another phone that was being used by SALGADO, and on August 18, 2020, Magistrate Judge Edmund F. Brennan authorized a warrant to collect precise location data on this phone for a period of thirty days. During these time periods, precise location information showed multiple locations that SALGADO used as suspected illicit drug stash locations.

8. In September 2020, a Confidential Source[1] (the "CS") who previously provided information about SALGADO and conducted controlled buys from SALGADO, advised that SALGADO was using a new cellular telephone number, (916) 212-5752 (i.e., the Target Cell Phone), as discussed further below. This affidavit seeks to authorize the collection of precise location information for a period of thirty days on SALGADO's newest phone, the Target Cell Phone.

---

[1] The CS is providing me with information solely in hopes of receiving financial compensation. The CS has a criminal history of felony convictions for theft and firearms offenses. The CS has provided other federal law enforcement officers with assistance in the past including but not limited to providing intelligence, making controlled purchases of narcotics and firearms, and introducing undercover agents to purchase narcotics. The CS's information has previously been utilized in state and federal search warrant affidavits leading to the seizure of large quantities of narcotics and firearms and the successful prosecution of individuals for federal criminal offenses. I have never found the CS to be false or misleading, and the CS's descriptions of drugs and drug dealing have been entirely consistent with my own training and experience in this area. For these reasons, I consider the CS reliable.

AFFIDAVIT                                                    3

### A. Background of Investigation

9. During 2019, I spoke with the CS regarding the ongoing heroin trafficking activities Alberto SALGADO. In speaking with the CS, I was able to confirm and verify the information provided by the CS through multiple database checks and through separate investigations leading to the seizure of drugs, including heroin and counterfeit Oxycodone tablets that tested positive for fentanyl. I noted that the information provided by the CS regarding drugs and drug dealing was entirely consistent with my own training and experience and I have not found the CS to be false or misleading. The CS provided the following information.

10. The CS related that he/she had met an individual subsequently identified as Alberto SALGADO in the Sacramento area in approximately 2018. SALGADO identified himself to the CS as being heavily involved in trafficking heroin, cocaine and methamphetamine, which he sold in the Sacramento area, and SALGADO displayed large amounts of these drugs to the CS on various occasions.

11. Law enforcement database inquiries revealed that SALGADO has multiple felony convictions including a 2016 felony conviction in Sacramento County for Possession of a Controlled Substance for Sale for which SALGADO is currently on probation.

### B. Purchases of 1,100 (109 and 99 Gross Grams) Counterfeit Oxycodone Pills Containing Fentanyl from Alberto SALGADO on June 3, 2020

12. Prior to June 3, 2020, SALGADO approached the CS at the CS's residence. SALGADO told the CS that he was selling heroin and oxycodone pills and wanted the CS to have his new phone number in case the CS knew people who were interested. SALGADO also informed the CS that he had a marijuana growing operation at his "spot," indicating it was separate from SALGADO's residence. A few days later after this meeting, SALGADO approached the CS again, told the CS that he was selling "ghost guns," and would also be able to sell 50- and 100-round ammunition drums. Based on my training and experience and conversations with other law enforcement officers, I know that a "ghost gun" is a firearm that is privately manufactured and therefore lacks a serial number or other identifying marks found on commercially manufactured firearms.

13. Agents also monitored and recorded the CS engaging in narcotics related phone calls with SALGADO. During these calls, the CS told SALGADO that the CS was in conversation with the same buyer who purchased the pills during the prior deals. The buyer was interested in buying several hundred pills, to which SALGADO stated he would sell the pills for $9.00 per pill.

14. On June 3, the CS confirmed with SALGADO that the buyer would be purchasing at least 600 pills and would be at the regular meet location around 12 p.m. Agents set up surveillance on SALGADO's drug stash house (8471 Varney Ave, Sacramento). At around the same time, Officers searched the CS for contraband with negative results, outfitted the CS with a recorder and transmitter, and Special Agent Brian Nehring and the CS travelled in SA Nehring's vehicle to the same meet location as the previous deals. As the CS and SA Nehring arrived, the CS sent SALGADO a text message "Am going to parking lot bro he is there at winco he said bye doll or tree p." SALGADO responded "20 min."

15. A short time later, I observed, via a pole camera, SALGADO and a dark skinned male walk away from SALGADO's suspected stash house and get into SALGADO's silver Honda sedan. Agents observed SALGADO arrive at the meet location, at which time he called the CS. SALGADO stated he saw an individual parked in a vehicle at the meet location which he believed was a police officer. SALGADO then drove to the southeast exit of the parking lot that empties into a residential area and told the CS where he was in order to meet. SA Nehring and the CS travelled to the new meet location, and SA Nehring gave the CS $5,400. The CS exited SA Nehring's vehicle and met with SALGADO and an unknown male in SALGADO's vehicle. At this time, SALGADO gave the CS approximately 600 pills (109 Gross Grams) in exchange for the $5,400. During this meeting, the CS told SALGADO that the buyer had money for an additional 500 pills and asked if SALGADO could supply the CS with this amount. SALGADO told the CS he would have to travel to meet his Source of Supply ("SOS") and give the SOS the money and get more pills.

16. After the meeting, the CS immediately turned over the pills to SA Nehring upon entering SA Nehring's vehicle and was searched for contraband with negative results. The pills were subsequently sent to the DEA Laboratory for analysis; a randomly selected pill was tested and found to contain fentanyl.

17. After leaving the meet location, SALGADO contacted the CS and informed the CS that he spoke with the SOS and was heading down to pick up the 500 pills. After SALGADO returned from obtaining the additional pills, SA Nehring gave the CS $4,600, and the CS exited SA Nehring's vehicle and entered SALGADO's silver Honda. SALGADO then gave the CS the pills (99 Gross Grams) in exchange for the $4,600. SALGADO stated to the CS that he just counted the pills after receiving them from his SOS and was 5 pills short of 500; SALGADO offered to go to his drug stash to retrieve the remaining 5 pills, but the CS told SALGADO that he could owe the buyer 5 pills the next time, per SA Nehring's direction. The CS exited SALGADO's vehicle and immediately turned over the pills to SA Nehring. These pills were subsequently sent to the DEA Laboratory for analysis; a randomly selected pill was tested and found to contain fentanyl.

### C. The Target Cell Phone Established as SALGADO's Phone

18. In September of 2020, I was informed by SA Nehring that he was contacted by the CS. The CS informed SA Nehring that SALGADO was using a new cellular telephone number, the Target Cell Phone. SALGADO sent the CS a text message that stated, *"Was up bro? Its SAL NEW NUMBER."* Based on my experience with this investigation, I believe that SALGADO contacted the CS with a new cell phone number in order to conduct future drug transactions.

19. On September 10, 2020, I monitored and recorded a narcotics related phone conversation between the CS and SALGADO. During this conversation, the CS informed SALGADO that he had a buyer that was inquiring about the price for "blue things," i.e., blue pills. SALGADO informed the CS that he would contact the CS back.

20. I also issued an Administrative Subpoena for the Target Cell Phone, which revealed it was a Verizon Wireless network phone. From my training and experience, as well as in my conversations with more experienced agents, it is common practice among drug dealers to change cellular telephone numbers in order to evade detection from law enforcement.

21. In my training and experience, I have learned that Verizon is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also

AFFIDAVIT 6

known as GPS data or latitude-longitude data and (2) cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (*i.e.*, antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (*i.e.*, faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

22. Based on my training and experience, I know that Verizon can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Verizon's network or with such other reference points as may be reasonably available.

23. Based on my training and experience, I know that Verizon can collect cell-site data about the Target Cell Phone.

### III. AUTHORIZATION REQUEST

24. Based on the foregoing, I request that the Court issue the proposed search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

25. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give them an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. §

AFFIDAVIT                                                              7

3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

26. I further request that the Court direct Verizon to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Verizon.  I also request that the Court direct Verizon to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon's services, including by initiating a signal to determine the location of the Target Cell Phone on Verizon's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

27. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

**[CONTINUED ON THE NEXT PAGE]**

AFFIDAVIT

8

28. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

/s/
James Bonanno
Special Agent
Drug Enforcement Administration

Subscribed and sworn to me telephonically on: 9/15/2020 at 9:40 am

Hon. Carolyn K. Delaney
U.S. MAGISTRATE JUDGE

Approved as to form by AUSA DAVID SPENCER

In addition, to ensure technical compliance with 18 U.S.C. §§ 3121-3127, I also request that this warrant shall also function as a pen register order. I thus certify that the information, under oath, that likely to be obtained is relevant to an ongoing criminal investigation conducted by the DEA, based on the agent's affidavit herein. *See* 18 U.S.C. §§ 3122(b), 3123(b).

AFFIDAVIT 9

## **ATTACHMENT A**

### **Property to Be Searched**

1. The cellular telephone assigned number (916) 212-5752 (the "Target Cell Phone"), whose service provider is Verizon, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey.

Information about the location of this phone that is within the possession, custody, or control of Verizon.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon, Verizon is required to disclose the Location Information to the government. In addition, Verizon must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon's services, including by initiating a signal to determine the location of the Target Cell Phones on Verizon's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| In the Matter of the Search of )<br>)<br>THE CELLULAR TELEPHONE ASSIGNED CALL )<br>NUMBER (916) 212-5752 )<br>)<br>) | Case No.  2:20-sw-0844 CKD<br><br>**SEALED** |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____New Jersey_____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**
This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A), and 2711(3)(A). Because the government has satisfied the requirements of 18 U.S.C. § 3122, this warrant also constitutes an order under 18 U.S.C. § 3123.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**


**YOU ARE COMMANDED** to execute this warrant on or before     September 28, 2020     *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☒   Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☒   for   30   days *(not to exceed 30)*   ☐   until, the facts justifying, the later specific date of _____.

Date and time issued:    9/15/2020 at 9:40 am                    */s/ Carolyn K. Delaney*
                                                                  *Judge's signature*

City and state:   Sacramento, California              Carolyn K. Delaney, U.S. Magistrate Judge
                                                       *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____  _____
Signature of Judge                                                         Date

## **ATTACHMENT A**

### **Property to Be Searched**

1. The cellular telephone assigned number (916) 212-5752 (the "Target Cell Phone"), whose service provider is Verizon, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey.

Information about the location of this phone that is within the possession, custody, or control of Verizon.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon, Verizon is required to disclose the Location Information to the government. In addition, Verizon must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon's services, including by initiating a signal to determine the location of the Target Cell Phones on Verizon's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).